UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------------X
DANIEL BROOKS; KAREEM BACCHUS; and,
SHARIEF BODDEN,

                Plaintiffs,

                **MEMORANDUM AND ORDER**

    -- against --                14-CV-6283 (RRM) (CLP)

NYC DOC Commissioner, JOSEPH PONTE; NYC
DEPARTMENT OF CORRECTIONS; WARDEN JANE
DOE OF GRVC; and SECURITY DEPUTY WARDEN
JANE DOE OF GRVC,

                Defendants.
----------------------------------------------------------------------X
ROSLYNN R. MAUSKOPF, United States District Judge.

      Plaintiffs Daniel Brooks ("Brooks"), Kareem Bacchus ("Bacchus"), and Sharief Bodden ("Bodden") (collectively, "plaintiffs"), who at the time of filing the complaint were pretrial detainees at the George R. Vierno Center ("GRVC") on Rikers Island, bring this *pro se* action pursuant to 42 U.S.C. § 1983, alleging that defendants violated their federal and state constitutional rights by depriving them of showers, hot meals, mail service, library access, and non-emergency medical care during three lockdowns in the six-week period preceding their filing of the complaint. (Doc. No. 1.) The Court grants plaintiffs' requests to proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915. (Doc. Nos. 2–4.) The complaint is dismissed without prejudice, but plaintiffs are granted leave to amend the complaint within thirty (30) days of the entry of this Memorandum and Order if they can do so in good faith.

## BACKGROUND

      The following facts are drawn from plaintiffs' complaint, the allegations of which are assumed to be true for purposes of this decision. Plaintiffs were, at the time of filing the complaint, incarcerated at GRVC – a facility operated by the New York City Department of

Correction, an agency of the City of New York. Plaintiffs were "in detainee status." (Compl. at 5.)

On September 14–15, 2014, GRVC was held under "lockdown status in which [plaintiffs] were not afforded showers, or hot meals." (*Id.* at 4.) On September 26–27, 2014, the facility was again held under lockdown and plaintiffs were "denied law library, mail service, hot showers, [and] hot meals for the course of twenty four hours." (*Id.*) Then, from October 5–9, 2014, an extended, but twice-interrupted, lockdown occurred: it began on or about October 5th (the beginning date and time are unspecified, but plaintiffs provide that the initial lockdown was for more than twenty-four hours over the period of "October 5–7, 2014"), was lifted for a period of nine hours on an unspecified date and time as well as for two hours on October 8th (from 5:00 a.m. to 7:00 a.m.), and ended at 7:00 p.m. on October 9th. The lockdown between October 5th and 9th lasted a minimum of sixty hours during which plaintiffs were deprived of showers, hot meals, mail service, and "any other services other than medication and emergency medical treatment." (*Id.*)

Plaintiffs requested an explanation for the lockdowns from GRVC employees. Bodden and Bacchus did not receive an explanation, but Brooks received two different explanations. (*Id.* at 5.) At first, an unidentified person told Brooks that the lockdown "status [wa]s being instituted as per order of the Commissioner Joseph Ponte." (*Id.*) Then defendant "Warden" told him that the lockdown was because of a "pending investigation" and that it would be resumed "if any in[c]idents took place in the facility." (*Id.*) Plaintiffs are dubious of the second explanation because no lockdown was implemented on October 11th, even after Brooks observed the "investigation unit in the main corridor headed to the even side of G.R.V.C." (*Id.*) Moreover,

"the cause of the lockdowns didn't take place in [their] housing areas so [they] should not have been punished for it." (*Id.*)

Plaintiffs do not allege any injury arising from the lockdowns. They seek damages, "a formal apology," and a "possible policy change to keep this from happening to other inmates under the care, custody and control of the New York City Department of Corrections." (*Id.* at 6.)

## STANDARD OF REVIEW

Under 28 U.S.C. § 1915A, the Court "shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity." 28 U.S.C. § 1915A(a). Upon review, the Court is required to "identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint . . . (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b); *Liner v. Goord*, 196 F.3d 132, 134 n.1 (2d Cir. 1999) (noting that under the Prison Law Reform Act ("PLRA"), *sua sponte* dismissal of frivolous prisoner complaints is not only permitted, but mandatory); *see* 28 U.S.C. § 1915(e)(2)(B).

Of course, when a prisoner is proceeding *pro se*, the Court is required to read the complaint liberally and interpret it as raising the strongest arguments it suggests. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Sealed Plaintiff v. Sealed Defendant #1*, 537 F.3d 185, 191–93 (2d Cir. 2008). However, even a *pro se* complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*

3

*v. Iqbal*, 556 U.S. 662, 678 (2009). Although the allegations contained in the complaint are assumed to be true, this tenet is "inapplicable to legal conclusions." *Id.* The Federal Rules of Civil Procedure do not require "detailed factual allegations," but demand "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.*

## DISCUSSION

**I.  Improper Defendants Under § 1983**

According to the caption of their complaint, plaintiffs are proceeding pursuant to 42 U.S.C. § 1983. This statute provides, in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for seeking redress.

42 U.S.C. § 1983. Section 1983 "is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes." *Baker v. McCollan,* 443 U.S. 137, 144 n.3 (1979).

In order to maintain a § 1983 action, a plaintiff must allege both that the conduct complained of was "committed by a person acting under color of state law" and "deprived a person of rights, privileges or immunities secured by the Constitution or laws of the United States." *Pitchell v. Callan*, 13 F.3d 545, 547 (2d Cir. 1994).

*A. Claims against the DOC*

Plaintiffs name as a defendant the City of New York Department of Corrections ("DOC"). The DOC, which is an agency of the City of New York, does not have a legal identity separate and apart from the municipality and cannot sue or be sued. *See Lauro v. Charles,* 219 F.3d 202, 205 n.2 (2d Cir. 2000); *Bailey v. New York City Police Dep't,* 910 F. Supp. 116, 117

(E.D.N.Y. 1996) (citing New York City Charter, Chapter 17, § 396, which provides that "all actions and proceedings for the recovery of penalties for the violation of any law shall be brought in the name of the City of New York and not that of any agency); *see also Hall v. City of White Plains,* 185 F. Supp. 2d 293, 303 (S.D.N.Y. 2002); *Wilson v. City of New York*, 800 F. Supp. 1098, 1101 (E.D.N.Y. 1992). Thus, the § 1983 claim against the DOC is dismissed pursuant to 28 U.S.C. §§ 1915A, 1915(e)(2)(B)(ii).

*B. Claims against Ponte*

Because vicarious liability is inapplicable to § 1983 suits, a plaintiff must prove that each government-official defendant, "through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676–77 (rejecting the argument that "a supervisor's mere knowledge of his subordinate's discriminatory purpose amounts to the supervisor's violating the Constitution") (citations omitted). Thus, a supervisory official cannot be held liable solely on account of the acts or omissions of his or her subordinates. *See Grullon v. City of New Haven*, 720 F.3d 133, 138 (2d Cir. 2013) ("[I]n order to establish a defendant's individual liability in a suit brought under § 1983, a plaintiff must show, *inter alia*, the defendant's personal involvement in the alleged constitutional deprivation."). The complaint here does not provide any facts in support of the personal involvement, if any, of Commissioner Ponte except to state that Brooks received an unattributed explanation that the lockdown was pursuant to the "order of Commissioner Joseph Ponte." (Compl. at 5.) This is insufficient to support a cause of action against Ponte, and thus the lawsuit is dismissed against him.

Should plaintiffs file an amended complaint, they must allege the personal involvement of each defendant, including Ponte, in the alleged constitutional violations. *See Farid v. Ellen,*

5

593 F.3d 233, 249 (2d Cir. 2010) ("[P]ersonal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.").

## II.     Conditions of Confinement

*A. Applicable Law*

A convicted prisoner's claim based on the conditions of his or her confinement is analyzed under the Eighth Amendment. *See Weyant v. Okst,* 101 F.3d 845, 856 (2d Cir. 1996) (noting that the Eighth Amendment governs medical claims of convicted persons because of its prohibition of "cruel and unusual punishment"). In the case of a pretrial detainee, the same claim is analyzed under the Fourteenth Amendment's Due Process Clause. *See Caiozzo v. Koreman,* 581 F.3d 63, 69 (2d Cir. 2009) (noting that because a pretrial detainee is not being "punished," pretrial detainees in state custody are protected by the Due Process Clause of the Fourteenth Amendment). Although plaintiffs identified their cause of action as arising under the Eighth Amendment to the United States Constitution, given their apparent status at the time of filing their complaint as pretrial detainees, plaintiffs' claims challenging the conditions of their confinement are properly brought under the Due Process Clause of the Fourteenth Amendment. In any event, the constitutional inquiries under the Eighth and Fourteenth Amendments are in all relevant respects identical. *Id.* at 72.

Under the Due Process Clause of the Fourteenth Amendment, the conditions of pretrial detention are constitutional unless they amount to punishment of the detainee. *See Bell v. Wolfish,* 441 U.S. 520, 535–37 (1979). "Because restraint is always necessary in effectuating confinement, not every uncomfortable or disabling condition and restriction can be considered punitive." *Benjamin v. Fraser*, 343 F.3d 35, 50 (2d Cir. 2003) (citation omitted), *overruled on other grounds by Caiozzo*, *supra*. To state a "claim based on conditions of confinement, an

6

inmate must allege that: (1) objectively, the deprivation the inmate suffered was 'sufficiently serious that he was denied the minimal civilized measure of life's necessities,' and (2) subjectively, the defendant official acted with 'a sufficiently culpable state of mind . . . such as deliberate indifference to inmate health or safety.'" *Walker v. Schult*, 717 F.3d 119, 125 (2d Cir. 2013) (quoting *Gaston v. Coughlin*, 249 F.3d 156, 164 (2d Cir. 2001)); *Trammell v. Keane*, 338 F.3d 155, 161 (2d Cir. 2002).

With respect to pleading an objective deprivation, the Second Circuit Court of Appeals has explained that "[b]ecause society does not expect or intend prison conditions to be comfortable, only extreme deprivations are sufficient to sustain a 'conditions-of-confinement claim.'" *Blyden v. Mancusi,* 186 F.3d 252, 263 (2d Cir. 1998) (citing *Hudson v. McMillian,* 503 U.S. 1, 9 (1992)). The "inmate must show that the conditions, either alone or in combination, pose an unreasonable risk of serious damage to his health." *Walker*, 717 F.3d at 125 (citing *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)). The conditions of confinement must be "evaluated in light of contemporary standards of decency," *Jabbar v. Fischer*, 683 F.3d 54, 57 (2d Cir. 2012), and may be "aggregated to rise to the level of a constitutional violation, but 'only when they have a mutually enforcing effect that produces the deprivation of a single, identifiable human need such as food, warmth or exercise.'" *Walker*, 717 F.3d at 125 (quoting *Wilson v. Seiter*, 501 U.S. 294, 304 (1991)).

With respect to demonstrating a subjectively culpable state of mind, a plaintiff "must show that the acts of defendants involved more than lack of due care, but rather involved obduracy and wantonness in placing his health in danger." *LaBounty v. Coughlin,* 137 F.3d 68, 73 (2d Cir. 1998); *see Farmer v. Brennan,* 511 U.S. 811, 837 (1970) (the plaintiff must show that the defendant acted with "more than mere negligence"). "To constitute deliberate indifference,

7

'[t]he prison official must know of and disregard an excessive risk to inmate health or safety.'" *Walker*, 717 F.3d at 125 (quoting *Jabbar*, 683 F.3d at 57).

*B. Application*

Plaintiffs allege that there were lockdowns at GRVC on all or part of the following days: September 14–15 and 26–27, 2014, and October 5–9, 2014, during which they were deprived of showers and hot meals, as well as occasionally deprived of access to the law library, mail service, and nonemergency medical treatment. The Court heeds the Second Circuit's "reaffirm[ation] that each prisoner complaint alleging a constitutional violation must be carefully analyzed in light of the particular facts contained therein." *Id.* at 130. Here, the specific facts in plaintiffs' complaint have not plausibly alleged conditions – alone or in combination – that deprived them of a minimal civilized measure of life's necessities. Nor have they alleged that defendants were deliberately indifferent to an excessive risk to inmate health or safety.

1. *Objective Prong*

    a. *Temperature of Food*

Plaintiffs allege that they were not given hot food during the periods of the lockdowns. There is no allegation that plaintiffs failed to receive three meals per day or that the meals they did receive were nutritionally inadequate. While prisoners are guaranteed a nutritionally adequate diet, *see Wilson v. Seiter*, 501 U.S. 294, 303 (1991), the provision of cold food over the duration of the lockdown does not, in this context, rise to the level of a due process violation. *See Waring v. Meachum*, 175 F. Supp. 2d 230, 239–40 (D. Conn. 2001) (finding that inadequate and cold food during weeklong lockdown did not rise to level of constitutional violation); *McLeod v. Scully*, No. 81-CV-3139 (RLC), 1984 WL 692, at *2 (S.D.N.Y. July 30, 1984) (holding that provision of two meals per day during eight-day lockdown did not rise to level of

8

Eighth Amendment violation); *see also Brown-El v. Delo*, 969 F.2d 644, 648 (8th Cir. 1992) ("claim that [plaintiff's] constitutional rights were violated when he was served cold food is frivolous"); *Hayward v. Procunier*, 629 F.2d 599, 600 (9th Cir. 1980) (determining no constitutional violation where prisoners were served sack lunches twice a day in their cells for two weeks during five-month lockdown); *Hoitt v. Vitek*, 497 F.2d 598, 601 (1st Cir. 1974) (concluding that prisoners' allegations concerning denial of hot meals failed to state cognizable claim of cruel and unusual punishment, given that prisoners were otherwise adequately fed); *Gawloski v. Dallman*, 803 F. Supp. 103, 111–12 (S.D. Ohio W.D. 1992) (holding that inmate's allegation that prison officials failed to provide hot meals "did not constitute cruel and unusual punishment absent some indication that [the inmate] received less than one meal per day or that the meals lacked nutritional value or were in some way physically harmful to [the inmate's] health").

Based on the facts presented and the above authorities, the Court finds that plaintiffs did not suffer a sufficiently serious deprivation of their rights because there are no allegations that they did not receive nutritionally adequate meals during the lockdown. Thus, plaintiffs' cause of action based on the failure to provide hot meals fails to state a claim on which relief may be granted. *See* 28 U.S.C. §§ 1915A, 1915(e)(2)(B)(ii).

   *b. Lack of Showers*

Plaintiffs allege that they were not permitted to shower during the lockdown periods. This claim also fails to rise to the level of a due process violation. The failure to provide inmates with showers during lockdowns has been upheld in cases where the lockdown itself was not subject to constitutional challenge. *See, e.g.*, *Banks v. Argo,* No. 11-CV-4222 (LAP), 2012 WL 4471585, at *4 (S.D.N.Y. Sept. 25, 2012) ("[E]ven assuming prison officials denied Plaintiff

shower access for the entire time alleged in his complaint – thirteen days – his claim still fails as a matter of law.") (citing *McCoy v. Goord,* 255 F. Supp. 2d 233, 260 (S.D.N.Y. 2003) ("[A] two-week suspension of shower privileges does not suffice as a denial of 'basic hygienic needs.'")); *Suarez v. Kremer*, No. 03-CV-809 (RJA), 2008 WL 4239214, at *8 (W.D.N.Y. Aug. 7, 2008) (finding that temporary denial of recreation or shower rights did not rise to level of Eighth Amendment violation); *Ford v. Phillips*, No. 05-CV-6646 (NRB), 2007 WL 946703, at *4 (S.D.N.Y. Mar. 27, 2007) ("[A]s a matter of law, minor and temporary deprivations of property, showers and recreation do not violate the Eighth Amendment."); *Beckford v. Portuondo*, 151 F. Supp. 2d 204, 210 (N.D.N.Y. 2001) (holding that temporary denial of shower rights does not violate Eighth Amendment); *Waring*, 175 F. Supp. 2d at 241–42 ("[T]he prohibition of showers and failure to provide a change of clothing during the seven day lockdown period does not demonstrate that plaintiffs were deprived of a minimum civilized level of life's necessities."); *McLeod*, 1984 WL 692, at *3 (finding no violation where prison deprived inmates of showers during eight-day lockdown); *see also Rust v. Grammer*, 858 F.2d 411, 414–15 (8th Cir. 1988) (holding that cancellation of shower privileges during nine-day lockdown did not violate Eighth Amendment); *Wright v. DeBruyn*, No. 93-CV-448 (RP), 1996 WL 441879, at *1–3 (N.D. Ind. Jun. 4, 1996) (determining no violation where showers were prohibited during first three to four weeks of ten-month lockdown; after first month inmates were permitted to shower once every eight to ten days).

Under these circumstances, the Court finds that plaintiffs did not suffer a sufficiently serious deprivation of their rights because they were unable to shower during the lockdowns. Plaintiffs' claim based on the cancellation of shower privileges during the lockdowns therefore fails to state a claim on which relief may be granted. *See* 28 U.S.C. §§ 1915A, 1915(e)(2)(B)(ii).

*c. Access to Law Library*

In order for plaintiffs to successfully plead a claim arising from their deprivation of access to the law library, they must allege that the restrictions about which they complain "hindered [their] efforts to pursue a legal claim – for example, by demonstrating that [they] ha[ve] been unable to file a complaint or [have] had a complaint dismissed for failure to observe a technicality." *Benjamin*, 264 F.3d at 184. Plaintiffs have made no such allegation in their complaint. Furthermore, access to legal assistance need not be unfettered, and facilities "may place reasonable restrictions on inmates' use of facility law libraries as long as those restrictions do not interfere with inmates' access to the courts." *Gamble v. City of New York ex rel. NYC Dep't of Correction,* No. 04-CV-10203 (TPG), 2009 WL 3097239, at *6 (S.D.N.Y. Sept. 25, 2009). Thus, the restrictions alleged in the complaint – as well as the fact that these restrictions are not alleged to have caused plaintiffs any injury – do not rise to the level of unconstitutional obstruction of access to courts. *See Coleman v. Bartlett*, 165 F.3d 13, 13 (2d. Cir. 1998) (finding that deprivation of access to law library, without showing of resulting harm, insufficient to state claim for relief); *Johnson v. Nassau Cnty.*, No. 13-CV-6510 (JS), 2014 WL 294250, at *6 (E.D.N.Y. Jan. 24, 2014) (holding that the plaintiff "failed to state a plausible claim for relief" regarding access to prison law library because he "made no allegations regarding an actual injury he suffered due to the allegedly inadequate law library or insufficient access to the law library"); *Simmons v. Adamy,* 987 F. Supp. 2d 302, 308 (W.D.N.Y. 2013) (dismissing the plaintiff's claim regarding denial of access to prison law library due to simultaneous scheduling with religious services, as the "plaintiff offer[ed] no evidence that he was harmed by the lack of more frequent law library access"); *Hayes v. Cnty. of Sullivan,* 853 F. Supp. 2d 400, 437 n.33 (S.D.N.Y. 2012) ("Plaintiff does not have a constitutional right to access the law library whenever he wishes and

has failed to show any injury resulting from allegedly not being called to the law library every time he made a request.").

*d. Mail Service and Routine Medical Care*

Similarly, the interruption in mail service and denial of routine medical care during the lockdowns does not rise to the level of a deprivation of the minimal civilized measures of life's necessities or subject plaintiffs to unreasonable health and safety risks. Because plaintiffs have failed to show that any of them suffered from serious medical conditions and that defendants intentionally denied or delayed plaintiffs' access to medical care, their Eighth Amendment claim based on inadequate medical care must fail. *See Smith v. Fischer*, 500 F. App'x 59, 61 (2d Cir. 2012) ("To succeed on an Eighth Amendment deliberate indifference claim, a plaintiff must satisfy two requirements. He must show both that the danger posed by the indifference he alleges is 'sufficiently serious' and that the defendant has acted with 'deliberate indifference to inmate health or safety' in failing to address this danger.") (quoting *Farmer v. Brennan,* 511 U.S. 825, 834 (1994)). Nor have plaintiffs alleged a sufficiently serious deprivation of their rights because they were sometimes deprived of mail service during the lockdown periods. *See Banks v. Argo*, No. 11-CV-4222 (LAP), 2012 WL 4471585, at *6 (S.D.N.Y. Sept. 25, 2012) (dismissing constitutional claims of incarcerated *pro se* plaintiff challenging restriction on telephone calls and mail communications that lasted up to thirteen days).

Finally, the Court concludes that plaintiffs have failed to allege that the "conditions either alone or in combination, pose an unreasonable risk of serious danger to [their] health." *Walker,* 717 F.3d at 125; *cf. Cano v. City of New York*, No. 13-CV-3341 (WFK), 2014 WL 4494169, at *7–8 (E.D.N.Y. Sept. 12, 2014) (holding that the plaintiffs' complaint, which "alleged [a] combination of overcrowded cells, exposure to insects, rodents, extreme temperatures, and

unsanitary conditions (including garbage, feces, urine, and vomit), sleep deprivation, the lack of adequate food and water, the inability to clean themselves, the lack of access to usable bathroom facilities, and the lack of protection from the crimes and conduct of other inmates" sufficiently "alleged objectively serious conditions depriving them of basic human needs, including food, a habitable temperature, sleep, and the ability to relieve oneself without exposure to other human excrement, among others"); *Boadi v. City of New York*, No. 12-CV-2456 (BMC), 2012 WL 3062063, at *4 (E.D.N.Y. July 26, 2012) (finding that a complaint alleging deprivation of an incarcerated individual's ability to "eat, drink, or use the bathroom for 18 consecutive hours" is sufficient to state a claim for deliberate indifference). Based on the facts presented in the complaint and the above authorities, the Court finds that the complaint fails to allege a sufficiently serious deprivation to substantiate a Due Process Fourteenth Amendment conditions-of-confinement claim.

2. *Subjective Prong*

Nor have plaintiffs alleged facts to show that any defendant acted with deliberate indifference. That is to say, even if plaintiffs had alleged objectively serious conditions, the complaint does not allege that defendants knew of and disregarded excessive risks to plaintiffs' health or safety.

Hence, the Court finds that the conditions alleged by plaintiffs do not fall below the "minimal civilized measure of life's necessities," and that they have failed to allege that defendants knew of and disregarded an excessive risk to the detainees' health or safety. *See Trammell*, 338 F.3d at 161; *Caliozzo*, 581 F.3d at 72. The complaint thus fails to state a claim on which relief may be granted and is dismissed.[1] *See* 28 U.S.C. §§ 1915A, 1915(e)(2)(B)(ii).

---

[1] Plaintiffs' claims under the New York State Constitution must also be dismissed because there is no private right of action under the New York State Constitution where an identical claim may be brought under § 1983. *Canzoneri*

### III. Requirements of the PLRA

*A. Injury*

Even if plaintiffs had successfully alleged claims of unconstitutional conditions existing at the jail during the lockdown, in order to obtain monetary damages they would have to provide evidence to show that each of them suffered an injury as a result of his incarceration at that facility. *See* 42 U.S.C. § 1997e(e) ("No federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injuries suffered while in custody without a prior showing of physical injury."). Plaintiffs have failed to allege facts to show, or indeed even to allege, that they suffered any viable injuries as a result of the conditions of confinement complained of in the complaint.

*B. Exhaustion of Administrative Remedies*

Even if plaintiffs could allege plausible claims against any of the defendants, the allegations in the complaint indicate that plaintiffs have failed to exhaust their administrative remedies prior to commencing this action. (*See* Compl. at 3.) *See* 42 U.S.C. § 1997e(a); *Harris v. Gunsett*, No. 12-CV-3578 (PAC), 2013 WL 3816590, at *1 (S.D.N.Y. July 22, 2013) (holding that, although inmates are not required to plead or demonstrate exhaustion in their complaints, if non-exhaustion is clear from the face of the complaint and attached documents, dismissal is warranted). Should plaintiffs file an amended complaint, they should be mindful of the steps necessary to exhaust their administrative remedies as inmates of the New York City Department of Correction, which are described in numerous judicial opinions and are publicly available on the DOC's website. *See* http://www.nyc. gov/html/doc/downloads/pdf/Directive _3376_Inmate_Grievance_Request_ Program.pdf (setting forth the review process for a

---

*v. Inccorporated Village of Rockvile Ctr.*, 986 F. Supp. 2d 194, 206 (E.D.N.Y. 2013) ("Because all state constitutional law claims are also asserted as Section 1983 claims, all such claims are dismissed.").

grievance filed by inmates of the New York City Department of Correction, which includes several layers of review and appeal); *Bolton v. City of New York*, No. 13-CV-5749 (RJS), 2014 WL 4446452, at *4 n.9 (S.D.N.Y. Sept. 9, 2014) (finding that claims for injuries arising out of a series of prison lockdowns that allegedly took place at a prison facility on Rikers Island were subject to summary judgment for failure to exhaust administrative remedies).

## IV. Leave to Amend

As currently stated, even with a liberal construction, the complaint fails to state a claim for mistreatment at the hands of DOC officials under the Due Process Clause of the Fourteenth Amendment. Nevertheless, in light of plaintiffs' *pro se* status, plaintiffs are afforded thirty (30) days to amend their complaint if they can, in good faith, set forth claims under § 1983 against defendants. *See* Fed R. Civ. P. 15(a); *Davis v. Goord*, 320 F.3d 346, 352 (2d Cir. 2003) ("Certainly the court should not dismiss without granting leave to amend at least once when a liberal reading of the [*pro se*] complaint gives any indication that a valid claim might be stated.") (quoting *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d Cir.1999)) (quotations omitted).

Should plaintiffs file an amended complaint, they must satisfy the minimal filing requirements of Fed. R. Civ. P. 8, providing defendant(s) with notice of the claims and a short, plain statement of the relevant facts supporting their claim(s). Plaintiffs must provide facts pertinent to each claim and cannot rely on generalized allegations of misconduct. If plaintiffs elect to file an amended complaint, they should list specifically what injury they suffered, when and how it occurred, and who was responsible for it. Conclusory allegations are not sufficient. *See Iqbal*, 556 U.S. at 678. Moreover, plaintiffs should make clear if they are challenging the constitutionality of the lockdown itself, or only its resultant conditions of confinement and lack of explanation. Plaintiffs should also be mindful of the PLRA's requirements and the

15

information contained in this Memorandum and Order regarding the necessity of personal involvement of any defendant(s), as well as the fact that the DOC may not be sued under § 1983.

## CONCLUSION

For the foregoing reasons, plaintiffs' complaint is dismissed without prejudice for failure to state a claim on which relief may be granted. *See* 28 U.S.C. §§ 1915A(b), 1915(e)(2)(B)(ii). However, in an abundance of caution and in light of plaintiffs' *pro se* status, plaintiffs shall be afforded thirty (30) days to file an amended complaint against defendant(s) if they can do so in good faith. If plaintiffs elect to file an amended complaint, it should be captioned as an "Amended Complaint," should bear the same docket number as this Memorandum and Order, and must provide facts giving rise to their claims against defendant(s). Plaintiffs are advised that an amended complaint will completely replace the original pleading and are reminded to include all facts that would support their claim. An amended complaint shall be submitted to the Court within thirty (30) days of the entry of this Memorandum and Order. All further proceedings are stayed for thirty (30) days for plaintiffs to comply with this Memorandum and Order. If plaintiffs fail to comply within the time allowed, the Court shall enter judgment dismissing this action. Once submitted, the amended complaint will be reviewed for compliance with this Memorandum and Order, and for sufficiency under Fed. R. Civ. P. 8 and 28 U.S.C. § 1915A.

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal would not be taken in good faith and therefore *in forma pauperis* status is denied for the purpose of any appeal. *See Coppedge v. United States*, 369 U.S. 438, 444–45 (1962).

The Clerk of Court is directed to mail a copy of this Memorandum and Order to plaintiffs and note the mailing on the docket.

SO ORDERED.

Dated: Brooklyn, New York
      August 25, 2016

*Roslynn R. Mauskopf*
_____
ROSLYNN R. MAUSKOPF
United States District Judge